Ralph M. Stone
SHALOV STONE BONNER & ROCCO LLP
485 Seventh Avenue, Suite 1000
New York, New York 10018
212.239.4340
Fax 212.239.4310

Robert M. Roseman (rroseman@srkw-law.com)
Andrew D. Abramowitz (aabramowitz@srkw-law.com)
Daniel J. Mirarchi (dmirachi@srkw-law.com)
Rachel Kopp (rkopp@srkw-law.com)
SPECTOR ROSEMAN KODROFF & WILLIS, PC
1818 Market Street, Suite 2500
Philadelphia, PA 19103
215.496.0300
Fax 215.496.6611

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BERT H. STURGIS, II, on behalf of himself and all Others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SATYAM COMPUTER SERVICES LTD., B. RAMALINGA RAJU, and B. RAMA RAJU, <br><br> Defendants. | Case No.:_____ |

## CLASS ACTION COMPLAINT

Plaintiff, on behalf of himself and all others similarly situated, by and through his undersigned attorneys, alleges the following based upon knowledge, with respect to his own acts, and based upon facts obtained through the investigation by his counsel.

## NATURE OF THE ACTION

1.      This a class action on behalf of all purchasers of American Depository Shares ("ADSs") of Satyam Computer Services Ltd. ("Satyam" or the "Company") between January 6, 2004 and January 6, 2009, inclusive, (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Satyam is India's fourth-largest information technology provider. Satyam was organized as a limited liability company under the laws of the Republic of India pursuant to the provisions of the Indian Companies Act on June 24, 1987.  During the Class Period, Satyam repeatedly reported strong financial performance and results and issued positive guidance for upcoming quarters.

3.      Unbeknownst to investors, however, during the Class Period, Defendants engaged in a multifarious fraud in which the Company's financial results and public disclosures were systematically falsified.  During this period, the Company overstated its profits and the debt the Company was owed for several years and understated its liabilities to assure investors and the marketplace that Satyam was financially stable.  In fact, Satyam had a shortfall of, at least, $1.04 billion.  At the center of the fraud was a fictitious $1.1 billion cash balance the Company alleged it maintained when, in fact, it did not exist.

4.      In an effort to conceal the $1.04 billion deficit, the Chairman of Satyam's board of directors, Defendant B. Ramalinga Raju, attempted to acquire the Maytas infrastructure and property companies owned by his family – Maytas Infra and Maytas Property – for $1.6 billion.  However, the deal was abandoned after shareholders determinedly complained that it was an attempt by the controlling family to raid Satyam's coffers.  However, Satyam was in much deeper trouble.

5.    The truth concerning the actual performance and condition of Satyam emerged on January 7, 2009, when Defendant B. Ramalinga Raju sent a letter to the Company's board of directors and the Securities & Exchange Board of India admitting to the multiyear fraud and that the Company inflated the amount of cash on the Company's balance sheet by nearly $1 billion and overstated its September 2008 quarterly revenues by 76% and profits by 97%. Since this disclosure, pre-market activity in the stock of the Company indicated a loss of nearly 84% of its value from $9.35 to $1.47, while the Company's American Depository Shares ("ADSs") did not trade when the New York Stock market opened on January 7, 2009. The media has dubbed Satyam as "India's Enron".

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over the subject matter of this action under Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1331, 1337 and 1367. The claims alleged herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations of the Securities and Exchange Commission ("SEC") promulgated thereunder, including Rule 10b-5, 17 C.F.R. § 240.10b-5.

7.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(c). Many of the acts and transactions that give rise to the violations of law alleged herein, including the dissemination to the public of materially false and misleading press releases and filings with the SEC, occurred in this District. In addition, Satyam's ADSs trade on the New York Stock Exchange.

8.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including, but not limited

to, the mails, interstate telephone communications and the facilities of the national securities markets.

## **PARTIES**

9.      Plaintiff purchased Satyam ADSs at artificially inflated prices during the Class Period, as set forth in the accompanying certification which is incorporated herein by reference, and was damaged thereby.

10.     Satyam Computer Services Ltd. was organized as a limited liability company under the laws of the Republic of India pursuant to the provisions of the Indian Companies Act on June 24, 1987.   The Company's agent for service in the United States is CT Corporation System, III 8th Avenue, New York, New York 1001l.   Satyam touts itself as a "leading global business and information technology company, delivering consulting, systems integration, and outsourcing solutions to clients in over 20 industries."   It maintains approximately 53,000 employees including those in subsidiaries and joint ventures and boasts almost 200 Fortune 500 companies as clients for their services.

11.     Defendant B. Ramalinga Raju ("B. Raju") has been on the board of directors since Satyam's inception in 1987.  He was appointed as Chairman of the Company's board of directors in 1995 where he served until his resignation on January 7, 2009.

12.     Defendant B. Rama Raju ("R. Raju") also served on the board of directors since Satyam's inception.  He became the Company's Managing Director and CEO in 1991 until his resignation on January 7, 2009.

13.     Defendants B. Raju and R. Raju are referred to collectively herein as the "Individual Defendants."

14.    During the Class Period, each of the Individual Defendants, as senior executive officers and/or directors of Satyam, was privy to confidential and proprietary information concerning the Company's operations, finances, financial condition, and present and future business prospects.  The Individual Defendants also had access to material adverse non-public information concerning Satyam, as discussed in detail below.  Because of their positions with Satyam, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects *via* access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and supervisory board meetings and committees thereof and *via* reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public, and that materially and affirmatively false and misleading statements as alleged herein were being made to the public

15.    Each of the Defendants is liable as a direct participant in the wrongs complained of herein.  In addition, the Individual Defendants, by reason of their status as executive officers and/or directors were each a "controlling person" within the meaning of Section 20 of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein.  Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Satyam's business, and controlled and/or possessed the authority to control the contents of Satyam's reports, press releases, SEC filings, and presentations to securities analysts (and, through these analysts, to the investing public).  The Individual Defendants were provided with copies of the Company's

reports, filings and press releases alleged herein to be misleading prior to or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, each of the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein, and is liable for the misrepresentations contained in those documents.

16.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading, and incomplete information conveyed in the Company's public filings, press releases, and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Satyam, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, knew or recklessly disregarded that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

17.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports, financial statements, and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Satyam, each of the Individual Defendants had access to the adverse

undisclosed information about Satyam's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Satyam and its business issued or adopted by the Company materially false and misleading

18.    Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Satyam ADSs, by disseminating materially false and misleading statements and/or concealing material adverse facts. As part of this scheme, defendants: (i) deceived the investing public regarding Satyam's business, its finances and the intrinsic value of Satyam's ADSs; and (ii) caused plaintiff and other members of the Class to purchase Satyam ADSs at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

19.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of (a) all persons who purchased or otherwise acquired Satyam ADSs, and (b) all United States residents who purchased the common stock of Satyam between January 6, 2004 and January 6, 2009 inclusive (the "Class Period"), and who were damaged thereby. Excluded from the Class are defendants, members of the immediate family of each of the Individual Defendants or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

20.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are

thousands of members of the Class located throughout the United States. As of March 31, 2008, there were reportedly more than 65 million shares of Satyam ADSs outstanding and over 670 million equity shares of Satyam. During the Class Period, Satyam ADSs were actively traded on the New York Stock Exchange under the symbol "SAY." Record owners and other members of the Class may be identified from records maintained by Satyam and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

21.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

22.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

23.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

b.     whether Defendants participated in and pursued the common course of conduct complained of herein;

c.     whether documents, press releases, financial statements, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, financial condition and prospects of Satyam;

d.      whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of Satyam;

e.      whether the market price of Satyam ADSs and common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f.      the extent to which the members of the Class have sustained damages and the proper measure of damages.

24.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

## SUBSTANTIVE ALLEGATIONS

**Background**

25.      Satyam is India's fourth-largest information technology provider. Satyam was organized as a limited liability company under the laws of the Republic of India pursuant to the provisions of the Indian Companies Act on June 24, 1987.  Satyam's operations are primarily conducted in India although a significant majority of its revenues is derived from the United States.

26.      In May 2001, Satyam completed an offering of 16,675,000 ADSs (representing 33,350,000 equity shares) in the United States and elsewhere outside of India a price of $9.71 per

ADS. According to its Form 20-F, dated June 30, 2008, Satyam "received approximately $152.7 million, net of underwriting discounts, commissions and other costs of this offering." On May 15, 2001, Satyam ADSs were listed on the New York Stock Exchange.

27.    During the Class Period Defendants issued a series of false and misleading statements, containing materially inaccurate financial information about the Company, which served to artificially inflate the value of its ADSs. When the truth was revealed, the Company's ADSs lost nearly their entire value and investors lost billions of dollars as a result.

**The False and Misleading Statements**

28.    Throughout the Class Period Defendants issued financial information about the Company, including information contained in its Annual Reports on Form 20-F, dated June 30, 2003, June 29, 2004, July 26, 2004, April 28, 2005, April 28, 2006, April 30, 2007 and August 8, 2008. These filings, which are incorporated herein by reference, were signed by Defendants and contained fairness opinions issued by the Company's outside auditor, PricerwaterhouseCoopers.

29.    For example, on June 30, 2003, prior to the Class period, Satyam filed its annual report on Form 20-F in which the Company indicated an increase in revenue and gross profits:

> Our total revenues increased by 10.8% to $459.2 million in fiscal 2003 from $414.5 in fiscal 2002 and 33.6% to $414.5 million in fiscal 2002 from $310.3 million in fiscal 2001. Our top two customers accounted for 24.9% of total revenues in 2003 down from 25.2% of total revenues in 2002. Additionally, our top 10 customers accounted for 49.8% of the revenues in 2003 as compared to 49.0% in 2002. Our worldwide technical headcount increased to 9,086 as of March 31, 2003 compared to 7,898 as of March 31, 2002, while the number of our technical associates offshore increased by 696 and technical associates onsite increased by 492 during this period. We expect our revenue to grow by approximately 15% in fiscal 2004.
>
> *        *        *
>
> **Gross profit.** Our gross profit was $186.5 million for fiscal 2003, representing an increase of 6.3% over gross profit of $175.5 million for

fiscal 2002. As a percentage of total revenues, gross profit decreased to 40.6% for fiscal 2003 from 42.3% for fiscal 2002. This decrease was attributable to: (i) an increase in our personnel costs due to increased annual salaries; (ii) an increase in the compensation paid to our U.S. based Indian employees to comply with new immigration regulations introduced in the U.S. effective July 2002; (iii) decrease in the billing rates and (iv) increased personnel costs for new hires. These increases were partly compensated by a decrease in deferred stock based compensation and communication expenses[.]

\*     \*     \*

**Net income.** Our net income was $79.8 million for fiscal 2003, representing an increase of 208.1% over net income of $25.9 million for fiscal 2002. As a percentage of total revenues, net income increased to 17.4% for fiscal 2003 from 6.2% for fiscal 2002.

30.    Likewise, in its June 29, 2004 Form 20-F, the Company boasted another increase in revenue and gross profits:

Our total revenues increased by 23.6% to $567.9 million in fiscal 2004 from $459.4 million in fiscal 2003 and 10.8% to $459.4 million in fiscal 2003 from $414.8 million in fiscal 2002. Our top two customers accounted for 24.2% of our revenues in fiscal 2004 down from 24.9% of our revenues in fiscal 2003. Additionally, our top 5 customers accounted for 36.4% of our revenues in fiscal 2004 as compared to 38.4% in fiscal 2003. Our worldwide technical headcount increased to 13,450 as of March 31, 2004 compared to 9,086 as of March 31, 2003, while the number of our technical associates offshore increased by 3,294 and technical associates onsite increased by 1,070 during this period.

\*     \*     \*

*Gross profit.* Our gross profit was $222.8 million for fiscal 2004, representing an increase of 21.1% over gross profit of $184.0 million for fiscal 2003. As a percentage of total revenues, gross profit decreased to 39.3% for fiscal 2004 from 40.1% for fiscal 2003. This decrease was attributable to the factors as explained in the cost of revenues above.

*Net income.* Our net income was $111.9 million for fiscal 2004, representing an increase of 35.9% over net income of $82.3 million for fiscal 2003. As a percentage of total revenues, net income increased to 19.7% for fiscal 2004 from 18% for fiscal 2003. This was primarily due to increase in operating income and increase in interest income. Operating income increased from $83.6 million or 18.2% of revenue in fiscal 2003 to

$121.1 million or 21.4% of revenue in fiscal 2004. Interest income increased from $7.2 million or 1.6% of revenue in fiscal 2003 to $20.3 million or 3.6% of revenue in fiscal 2004. These increases were offset by decrease in minority interest in losses of subsidiaries and increase in income tax expense. Minority interest in losses of subsidiaries decreased from $11.1 million or 2.4% of revenue in fiscal 2003 to $nil in fiscal 2004. Income tax expense increased from $9.7 million or 2.1% of revenue in fiscal 2003 to $22.5 million or 4.0% of revenue in fiscal 2004. This increase in income tax expense was primarily due to increase in tax of $8.9 million on income from United States.

31.    In its Form-20, dated April 28, 2005, Satyam touted that the Company's profitability has "grown rapidly in recent years." Specifically, the Company reported that:

In fiscal 2005, total revenues increased by 40.1% as compared to fiscal 2004. Our revenues grew to $793.6 million in fiscal 2005 from $566.4 million in fiscal 2004. Our revenue and profitability growth is attributable to a number of factors related to the expansion of our business, including increase in the volume of projects completed for our widening customer base, increase in our associate numbers, increased growth in our consulting and enterprise business solutions business and a strengthening of our customer base in North America and Europe. Our growth has continued despite increasing pressure for higher wages for our associates coupled with pressure for lower prices for our customers. In fiscal 2005, 2004 and 2003, our five largest customers accounted for 29.2%, 36.4% and 38.4%, respectively, of our total revenues[.]

32.    Throughout the Class Period, Satyam boasted the increase in its revenues and profits, despite knowing that its profits and debt owed to the Company were overstated and the liabilities it owed were understated. In the last Form 20-F filed on August 8, 2008, it stated:

**Revenues.** Our revenues increased by 46.3% to $2,138.1 million in fiscal 2008 from $1,461.4 million in fiscal 2007. This revenue growth of $676.7 million in fiscal 2008 was primarily the result of an increase in business from existing customers. Revenues from existing customers increased by 55.9% to $1,975.9 million in fiscal 2008 from $1,267.3 million in fiscal 2007, the increase being primarily due to new projects/orders from our existing customers. Revenue from new customers amounted to $162.1 million in fiscal 2008 as compared to $194.1 million in fiscal 2007. We added 130 and 138 customers including 12 and 7 from the Fortune Global 500 and Fortune U.S. 500 list in fiscal 2008 and 2007, respectively.

During fiscal 2008, revenues (IT services excluding inter-segment revenues) from consulting and enterprise business solutions increased by $345.1 million, revenues from application development and maintenance increased by $241.7 million and revenue from extended engineering solutions and infrastructure management services, increased by $49.5 million and $24.4 million respectively. In terms of percentage growth in fiscal 2008 over fiscal 2007, revenues from consulting and enterprise solutions has grown by 57.5%, application development and maintenance services has grown by 35.8%, extended engineering solutions and infrastructure management services have grown by 52.9% and 38.3%, respectively.

Revenues from IT services (excluding inter-segment revenues) provided on a time-and-materials basis increased to 68.1% in fiscal 2008 from 61.0% in fiscal 2007. Revenues from IT services provided on a fixed-price basis decreased to 31.9% in fiscal 2008 from 39.0% in fiscal 2007.

The onsite revenues increased to $740.8 million in fiscal 2008 from $545.0 million in fiscal 2007 primarily on account of new engagements in consulting and enterprise business solutions and the need for extensive interactions with customers in the early stages of new engagements to understand their business needs and create the relevant processes before we move the appropriate portion of the work offshore.

Of the total increase of $676.7 million in revenues in fiscal 2008, $361.0 million was due to increased business in the United States, $163.3 million in Europe, $128.2 million in Asia Pacific and $30.9 million in rest of the world which was offset by decrease in business in India by $6.7 million. Our increased business in the United States, Europe and rest of the world was due to additional business from existing customers.

*       *       *

***Net income.*** As a result of the foregoing, our net income was $417.0 million in fiscal 2008, representing an increase of 39.7% over our net income of $298.4 million in fiscal 2007. As a percentage of revenues, net income decreased to 19.5% in fiscal 2008 from 20.4% in fiscal 2007.

33.    The financial information contained in these filings was false and misleading because, as described below, the Company's financial information was systematically falsified, its cash amounts "inflated" by material amounts, and its assets purely "fictitious."

**The Truth Begins to Emerge**

34.     On January 7, 2009, Defendant B. Raju sent a letter to the Satyam Board of Directors and the Securities & Exchange Board of India acknowledging a multi-year fraud in which Satyam's financial accounts and disclosures were systematically falsified, its profits were overstated for the past several years, the debt owed to the Company was overstated and its liability understated. B. Raju admitted to having inflated the amount of cash on the Company's balance sheet by nearly $1 billion and overstating Satyam's September 2008 quarterly revenues by 76% and profits by 97%.

35.     B. Raju admitted that 50.4 billion rupees, or $1.04 billion, of the 53.6 billion rupees in cash and bank loans the Company listed in assets for its second quarter, which ended in September 2008, were nonexistent.

36.     B. Raju described the scheme as a small discrepancy that grew beyond his control. "What started as a marginal gap between actual operating profit and the one reflected in the books of accounts continued to grow over the years. It has attained unmanageable proportions as the size of company operations grew," he wrote. "It was like riding a tiger, not knowing how to get off without being eaten."

37.     B. Raju explained that he had attempted and failed to bridge the gap, including an attempt in December 2008 to buy two construction firms in which the company's founders held stakes.

38.     Below is the text of the letter which was filed by the Company on Form 6-K on January 7, 2009:

To the Board of Directors
Satyam Computers Services Ltd.

From B. Ramalinga Raju
Chairman, Satyam Computer Services Ltd.

Dear Board Members,

It is with deep regret, and tremendous burden that I am carrying on my conscience, that I would like to bring the following facts to your notice:

1.    The balance sheet carries as of September 30, 2008

    a.    Inflated (non-existent) cash and bank balance of Rs. 5,040 crore [50.04 billion rupees or $1.04 billion] (as against Rs. 5361 crore reflected in the books)

    b.    An accrued interest of Rs. 376 crore which is non-existent

    c.    An understated liability of Rs. 1,230 crore on account of funds arranged by me

    d.    An over stated debtors position of Rs. 490 crore (as against Rs. 2651 reflected in the books)

2.    For the September quarter (Q2) we reported a revenue of Rs. 2,700 crore and an operating margin of Rs. 649 crore (24% of revenues) as against the actual revenues of Rs. 2,112 crore and an actual operating margin of Rs. 61 crore (3% of revenues).  This has resulted in artificial cash and bank balances going up by Rs. 588 crore in Q2 alone.

The gap in the balance sheet has arisen purely on account of inflated profits over a period of last several years (limited only to Satyam standalone, books of subsidiaries reflecting true performance).  What started as a marginal gap between actual operating profit and the one reflected in the books of accounts continued to grow over the years.  It has attained unmanageable proportions as the size of the company operations grew significantly (annualized revenue run rate of Rs. 11,276 crore in the September quarter, 2008 and official reserves of Rs. 8,392 crore). The differential in the real profits and the one reflected in the books was further accentuated by the fact that the company had to carry additional resources and assets to justify higher level of operations - thereby significantly increasing the costs.

Every attempt made to eliminate the gap failed.  As the promoters held a small percentage of equity, the concern was that poor performance would result in a

take-over, thereby exposing the gap. It was like riding a tiger, not knowing how to get off without being eaten.

The aborted Maytas acquisition deal was the last attempt to fill the fictitious assets with real ones. Maytas' investors were convinced that this is a good divestment opportunity and a strategic fit. Once Satyam's problem was solved, it was hoped that Maytas' payments can be delayed. But that was not to be. What followed in the last several days is common knowledge.

I would like the board to know:

1.  That neither myself, nor the Managing Director (including our spouses) sold any shares in the last eight years - excepting for a small proportion declared and sold for philanthropic purposes.

2.  That in the last two years a net amount of Rs. 1,230 crore was arranged to Satyam (not reflected in the books of Satyam) to keep the operations going by resorting to pledging all the promoter shares and raising funds from know sources by giving all kinds of assurances (Statement enclosed, only to the members of the board). Significant dividend payments, acquisitions, capital expenditure to provide for growth did not help matters. Every attempt was made to keep the wheel moving and to ensure prompt payment of salaries to the associates. The last straw was the selling of most of the pledged share by the lenders on account of margin triggers.

3.  That neither me, nor the Managing Director took even one rupee/dollar from the company and have not benefitted in financial terms on account of the inflated results.

4.  None of the board members, past or present, had any knowledge of the situation in which the company is placed. Even business leaders and senior executives in the company, such as Ram Mynampati, Subu D, T.R. Anand, Keshab Panda, Virender Agarwal, A.S. Murthy, Hari T, SV Krishnan, Vijay Prasad, Manish Mehta, Murali V, Sriram Papani, Kiran Kavale, Joe Lagioia, Ravindra Penumetsa, Jayaraman and Prabhakar Gupta are unaware of the real situation as against the books of accounts. None of my or Managing Director's immediate or extended family members has any ideas about these issues.

Having put the facts before you, I leave it to the wisdom of the board to take the matters forward. However, I am also taking the liberty to recommend the following steps:

1.   A task force has been formed in the last few days to address the situation arising out of the failed Maytas acquisition attempt. This consists of some of the most accomplished leaders of Satyam: Subu D, T.R. Anand, Keshab Panda and Virender Agarwal, representing business functions, and A.S. Murthy, Hari T and Murali V representing support functions. I suggest that Ram Mynampati be made the Chairman of this Task Force to immediately address some of the operational matters on hand. Ram can also act as an interim CEO reporting to the board.

2.   Merrill Lynch can be entrusted with the task of quickly exploring some Merger opportunities.

3.   You may have a 'restatement of accounts' prepared by auditors in light of the facts that I have placed before you.

I have promoted and have been associated with Satyam for well over twenty years now. I have seen it grow from few people to 53,000 people, with 185 Fortune 500 companies as customers and operations in 66 countries. Satyam has established an excellent leadership and competency base at all levels. I sincerely apologize to all Satyamites and stakeholders who have made Satyam a special organization, for the current situation. I am confident they will stand by the company in this hour of crisis.

In light of the above, I fervently appeal to the board to hold together to take some important steps. Mr. T.R. Prasad is well placed to mobilize support from the government at this crucial time. With the hope that members of the Task Force and the financial advisor, Merrill Lynch (now Bank of America) will stand by the company at this crucial hour, I am marking copies of this statement to them as well.

Under the circumstances, I am tendering my resignation as the chairman of Satyam and shall continue in this position only till such time the current board is expanded. My continuance is just to ensure enhancement of the board over the next several days or as early as possible.

I am now prepared to subject myself to the laws of the land and face the consequences thereof.

(B. Ramalinga Raju)

Copied marked to:

1. Chairman SEBI
2. Stock Exchanges

39.     On January 7, 2009, Defendant B. Raju, the Company's Managing Director and CEO of Satyam resigned. The Company announced that Ram Myanpati, President and whole-time director of Satyam, would become the interim CEO pending ratification by the Board.

40.     On January 7, 2009, Satyam's auditor PricewaterhouseCoopers said that it was examining the contents of the statement issued by B. Raju and would not comment further due to client confidentiality.

41.     On January 7, 2009, DSP Merrill Lynch Limited, which had been previously retained by Satyam to assist a review of Satyam's strategic options, terminated its engagement with Satyam. According to Merrill Lynch's termination letter the termination was prompted by the disclosure of "material accounting irregularities."

42.     As a result of these revelations, trading in ADSs was halted. However, pre-market activity in the stock indicates a loss of roughly 90% of its value.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

43.     At all relevant times, the market for Satyam ADSs was an efficient market for the following reasons, among others:

a.     Satyam ADSs met the requirements for listing, and was listed and actively traded, on the NYSE, a highly efficient market;

b.     As a regulated issuer, Satyam filed periodic reports with the SEC;

c.     Satyam stock was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

d.      Satyam regularly issued press releases which were carried by national newswires. Each of these releases was publicly available and entered the public marketplace.

44.      As a result, the market for Satyam securities promptly digested current information with respect to Satyam from all publicly-available sources and reflected such information in Satyam's stock price. Under these circumstances, all purchasers of Satyam ADSs during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

45.      The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. The specific statements pleaded herein were not identified as "forward-looking statements" when made.  Nor was it stated with respect to any of the statements forming the basis of this complaint that actual results "could differ materially from those projected."  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Satyam who knew that those statements were false when made.

## SCIENTER ALLEGATIONS

46.    As alleged herein, Defendants acted with scienter in that Defendants knew, and admitted, that the public documents and statements, issued or disseminated by or in the name of the Company, especially with respect to the Company's financial statements, were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Satyam and its business practices, their control over and/or receipt of Satyam's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Satyam were active and culpable participants in the fraudulent scheme alleged herein. Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. This case does not involve allegations of false forward-looking statements or projections but instead involves false statements concerning the Company's business, finances and operations. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

47.    The Individual Defendants engaged in such a scheme to inflate the price of Satyam ADSs in order to: (i) protect and enhance their executive positions and the substantial compensation and prestige they obtained thereby; and (ii) enhance the value of their personal holdings of Satyam stock.

## LOSS CAUSATION ALLEGATIONS

48.    Defendants' unlawful conduct alleged herein directly caused the losses incurred by Lead Plaintiffs and the Class. The false and misleading statements set forth above in ¶¶ 28-32 were widely disseminated to the securities markets, investment analysts and to the investing public. Those false and misleading statements, which materially misrepresented the Company's financial results, among other things, caused and maintained the artificial inflation of the price of Satyam's stock and ADS' price and caused those securities to trade in excess of their true value.

49.    As described herein, Defendants' material misrepresentations and omissions had the effect of creating and maintaining an artificially inflated price for Satyam's stock. Those misrepresentations and omissions that were not immediately followed by an upward movement in the Company's stock price served to maintain the share price at artificially inflated levels by maintaining and supporting the false public perception of Satyam's business, operations, performance and prospects.

50.    Defendants had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial and operational condition or to cause and direct that such information be disseminated and to promptly correct any previously disseminated information that was misleading to the market. As a result of their failure to do so, the price of Satyam's stock and ADS' price was artificially inflated during the Class Period, damaging Plaintiff and the Class.

51.    Until shortly before Plaintiff filed this Complaint, he was unaware of all of the facts, as described herein, and could not have reasonably discovered the Defendants' fraudulent scheme by the exercise of reasonable diligence.

## COUNT I

### (Violations of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

52.     Plaintiff repeats and realleges each and every allegation contained above.

53.     Each of the defendants: (a) knew or recklessly disregarded material adverse non-public information about Satyam's financial results and then existing business conditions, which was not disclosed; and (b) participated in drafting, reviewing and/or approving the misleading statements, releases, reports and other public representations of and about Satyam.

54.     During the Class Period, Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Satyam's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

56.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Satyam as specified herein.

57.    These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Satyam's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Satyam and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Satyam securities during the Class Period.

58.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's annual reports, internal budgets, plans, projections and/or reports; (iii) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; (iv) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading; and (v)

each of the Individual Defendants either signed the materially misleading statements or personally made materially misleading statements to the public.

59.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.    Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Satyam's financial condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's business, assets, liabilities, and earnings during the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

60.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Satyam's securities was artificially inflated during the Class Period.    In ignorance of the fact that market prices of Satyam's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Satyam's securities during the Class Period at artificially high prices and were damaged thereby.

61.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Satyam was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Satyam securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

62.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

63.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

### (Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants)

64.    Plaintiff repeats and realleges each and every allegation contained above.

65.    The Individual Defendants acted as controlling persons of Satyam within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants, because of their positions with

Satyam, controlled the contents of quarterly and annual reports, press releases and presentations to securities analysts. Each Individual Defendant either signed documents alleged herein to have been misleading, or personally made public statements alleged to have been misleading. Each Individual Defendant was provided with copies of the reports and press releases alleged herein to be misleading prior to or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material nonpublic information available to them, they had the power and authority to cause Satyam to engage in the wrongful conduct alleged herein.

66.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same

67.     As set forth above, Satyam and the Individual Defendants each violated Section 10(b) and Rule 10b-5, promulgated thereunder, by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE,** Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action and certifying Plaintiff as class representatives under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  January 13, 2009                **SHALOV STONE BONNER & ROCCO, LLP**

By: _Ralph M Stone_____
        Ralph M. Stone (rstone@lawssb.com)
        485 Seventh Avenue, Suite 1000
        New York, NY 10018
        Tel:  (212) 239-4340
        Fax:  (212) 239-4310

**SPECTOR ROSEMAN KODROFF**
    **& WILLIS, P.C.**
    Robert M. Roseman (rroseman@srkw-law.com)
    Andrew D. Abramowitz (aabramowitz@srkw-law.com)
    Daniel J. Mirarchi (dmirachi@srkw-law.com)
    Rachel Kopp (rkopp@srkw-law.com)
    1818 Market Street, Suite 2500
    Philadelphia, PA 19103
    Tel:     (215) 496-0300
    Fax:     (215) 496-6611

*Attorneys for Plaintiff*

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

I, Bert H. Sturgis II, ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.      I am the plaintiff in the Complaint, and make this certification pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995, and as required by Section 21D(a)(2) of Title I of the Securities Exchange Act of 1934.

2.      I have reviewed the foregoing complaint filed on my behalf and on behalf of all others similarly situated, and I authorized its filing.

3.      I did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action arising under Title I of the Securities Exchange Act of 1934.

4.      I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

5.      The following are all my transactions in Satyam Computer Services American Depository Shares that are the subject of this action during the Class Period specified in the Complaint:

| No. Of Sh. Purchased | Price Per Share | Date | No. Of Sh. Sold | Price Per Share | Date |
|---|---|---|---|---|---|
| 600 | 8.99 | 1/2/09 | 0 | | |
| 300 | 8.82 | 12/30/08 | | | |
| 300 | 8.43 | 12/29/08 | | | |
| 200 | 8.11 | 12/22/08 | | | |
| 200 | 8.60 AM | 12/22/08 | | | |
| 200 | 8.60 | 12/17/08 | | | |
| 200 | 8.50 | 12/29/08 | | | |

SPECTOR ROSEMAN KODROFF & WILLIS, P.C.

Total number of shares held at the start of the Class Period: _____

6.  As of the date of this Certification, I have sought to serve as a representative party on behalf of a class under Title I of the Securities Exchange Act of 1934 for the following:

(Please indicate any other class action cases in which you are or have been involved in during the prior three years.)

7.  I agree not to accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.  I make this Certification without waiver of any applicable privileges and without waiver of any right to challenge the necessity for, or the constitutionality of, this Certification, or to object to the filing of this Certification on any ground whatsoever.

I declare under penalty of perjury that the matters stated in this Certification are true to the best of my knowledge, information and belief.

Executed this _11_ day of the month of ___January___, 2009.

_____
Bert H. Sturgis II

SPECTOR ROSEMAN KODROFF & WILLIS, P.C.